UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| **Paul J. Henjum,** | Civil No. 10-3988 (JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| **Michael J. Astrue**, | |
| Commissioner of Social Security, | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

Plaintiff Paul Henjum (Henjum) brings this action contesting the Commissioner's decision that Henjum received workers' compensation payments prior to January 2007, which were subject to the offset provision contained in section 224(a) of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). Henjum is represented by Michael J. Cuzzo. Defendant is represented by Lonnie F. Bryan, Assistant U.S. Attorney. The parties consented to a final judgment from this Court in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73 and Local Rule 72.1(c). The matter is before the Court on the parties' cross-motions for summary judgment. (Doc. Nos. 11, 20.) Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Henjum's motion for summary judgment (Doc. No. 11) is **DENIED.**

2. The Commissioner's motion for summary judgment (Doc. No. 20) is **GRANTED**.

1

    3.       This matter is dismissed with prejudice.

    4.       The following memorandum is incorporated by reference.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated this 13th day of September, 2011.

                                              s/ *Jeanne J. Graham*
                                              JEANNE J. GRAHAM
                                              United States Magistrate Judge

**MEMORANDUM**

**I.    BACKGROUND**

The question presented here is whether Henjum's worker's compensation benefits should be offset against his social security disability benefits. The Social Security Administration granted Henjum's application for disability insurance benefits ("DIB"), finding Henjum to be disabled beginning June 28, 2001, and eligible for benefits as of January 2002. (Tr. 15-19.) Henjum also received workers' compensation benefits ("WC"), beginning in June 2001. (Tr. 21, 37.) In July 2002, Henjum's weekly worker's compensation benefit of $509.82 was discontinued, and Henjum brought another claim before a worker's compensation judge for continued benefits. (Tr. 70, 82.) The claim was tried before a workers' compensation judge. (Id.) Although the actual workers' compensation award is not in the record, it is undisputed that on December 14, 2006,[1] the workers' compensation judge awarded Henjum a total of $59,634.50 payable in the following manner:

---

[1] The original order was dated December 11, 2006, and the worker's compensation judge issued an amended order on December 14, 2006, for the purpose of adding an award for permanent partial disability. (Tr. 70.)

- $11,419.97 temporary total disability for the period from 6/28/01 to 12/2/01;

- $13,051.39 temporary total disability for the period from 1/30/02 to 7/28/02;

- $25,083.14 permanent total disability for the period from 11/4/03 to 10/12/04; and

- $10,080.00 permanent partial disability on 12/22/06.

(Tr. 21, 31, 36, 37, 80-81.)

On December 22, 2006, the Minnesota Workers' Compensation Division sent Henjum a "Notice of Benefit Payment," which indicated a final payment was issued. (Tr. 20.) Although Henjum's employer had already made payments, the employer appealed the worker's compensation award primarily because the employer disagreed with the finding that Henjum met the permanent partial disability threshold for permanent total disability claims. (Tr. 29-30, 70.) The parts of the award which specifically related to the permanent partial disability threshold for permanent total disability claims were the award of $25,083.14 for the period of November 4, 2003 to October 12, 2004 (paid in weekly amounts of $509.82) and $10,080.00 on December 22, 2006. (Tr. 21, 36.)

Henjum and his employer entered into a "Stipulation for Settlement" ("Stipulation") dated January 23, 2007.[2] (Tr. 26-34.) In the Stipulation, Henjum's employer stated that it had mistakenly paid Henjum $36,457.93 (withholding attorney's fees of $7,232.63) because it timely appealed the award to the Worker's Compensation Court of Appeals. (Tr. 30.) The terms of the Stipulation required Henjum to return $800.00 of the benefits he had been paid, and Henjum's

---

[2] Henjum notes there are several typos in the Stipulation regarding the date of his injury, which should read May 16, 2001, not May 16, 2005. (Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. at 4. ("Pl.'s Mem."))

attorney to return $200.00.  (Tr. 31.)  The Stipulation provided that the remaining money [net $29,425.30 to Henjum after deduction of statutory attorney's fees] was meant to "maximize the Employee's social security . . . benefits[,]" by treating the lump sum Henjum retained as if the payments had been prorated over Henjum's life expectancy beginning on November 4, 2003, in the amount of $120.10 per month.  (Tr. 31-32.)  In other words, the Stipulation did not require Henjum to actually be paid $120.10 per month beginning November 4, 2003, over his life expectancy.  Instead, he would retain all but $800.00 of the benefits already paid to him.  A copy of the Stipulation was provided to the Social Security Administration on May 1, 2007.  (Tr. 35.)

In June 2007, and again in September, the SSA notified Henjum that he had received overpayments of DIB due to his receipt of workers' compensation benefits between January 2002 and January 2004.  (Tr. 40-42, 53-56.)  Henjum filed a request for a hearing by an Administrative Law Judge, wherein he contended the Stipulation, not the initial workers' compensation award, controlled whether an overpayment should be assessed between January 2002 and January 2004, and the Stipulation provided that the payments were to be prorated over his life expectancy, deemed to be in the amount of $120.10 per month.  (Tr. 57.)

A hearing was held before an Administrative Law Judge on April 29, 2008.  (Tr. 77-83.)  At the hearing, Henjum's counsel argued the offset of benefits should be governed by the Stipulation, because it was the only legally binding document governing the workers' compensation payments after the award by the workers' compensation judge had been appealed.  (Tr. 80.)  Henjum's attorney asserted that the payment the employer made to Henjum was paid

back during the pendency of the appeal.  (Tr. 81.)  Therefore, he argued, it was the Amended

Notice of Benefit Payment[3] that reflected the only payments Henjum received.  (Id.)

On July 1, 2008, the ALJ issued a decision unfavorable to Henjum.  (Tr. 8-14.)  The ALJ made the following findings:

> 1.  Based on an injury, the claimant received the following workers' compensation payments:  a payment of $11,419.97 for temporary total disability from June 28, 2001 to December 2, 2001; $13,051.39 in permanent total disability from January 30, 2002 through July 28, 2002; and $25,083.14 from November 4, 2003 through October 12, 2004.  In addition, the claimant received a payment of $10,080.00 in "PP" (or permanent partial disability) which was paid on December 22, 2006.
>
> 2.  The claimant and his employer entered into a Settlement Agreement in January 2007 and agreed that the employer would pay $36,475.93 minus $7,032.63 in attorney's fees and $800 previously paid to the employee or claimant by mistake for a net payment to the claimant/employee of $29,425.30 to be prorated from November 4, 2003 through the expected life of the claimant or 245 months.
>
> 3.  As part of the Settlement Agreement, the claimant agreed to reimburse his employer and insurer $800.00 and his attorney agreed to reimburse the sum of $200.00.
>
> 4.  There is no other evidence that workers' compensation previously received was ever returned or paid back.
>
> 5.  The claimant received workers' compensation benefits prior [to] January 2007, which were subject to the offset provision contained in section 224(a) of the Social Security Act.  42 U.S.C. 424a, *see also* 20 CFR 404.408 and SSR 97-3.

(Tr. 13-14.)  Henjum appealed the ALJ's decision, but the Appeals Council denied review on August 27, 2010.  (Tr. 2-5.)  When the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner for purposes of judicial review.  42 U.S.C.

---

[3]   There is no document entitled Amended Notice of Benefit Payment in the Administrative Record.

§ 405(g); Clay v. Barnhart, 417 F.3d 922, 928 (8th Cir. 2005); Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992). Henjum filed a complaint in this Court on September 21, 2010, seeking review of the agency decision.[4] [Doc. No. 1.] The only issue Henjum raised is whether the Commissioner has the right to offset his DIB subsequent to November 4, 2003. (Pl.'s Mem. at 3-4.)

## II.   ANALYSIS

Review by this Court of the Commissioner's final decision is limited to a determination of whether the decision of the Commissioner is supported by substantial evidence on the record as a whole and whether the Commissioner applied the correct legal standards. Berger v. Apfel, 200 F.3d 1157, 1161 (8th Cir. 2000) (citing 42 U.S.C. § 405(g) and Richardson v. Perales, 402 U.S. 389, 401 (1971)). The amount of DIB an individual may receive while simultaneously receiving workers' compensation benefits is governed by 42 U.S.C. § 424a and 20 C.F.R. § 404.408(a). Sunde v. Barnhart, 417 F.3d 986, 987 (8th Cir. 2005). "When an individual's combined DIB and WC benefits exceed eighty percent of the individual's pre-disability earnings, the Act requires a reduction in DIB-called a DIB 'offset.'" Id. (citing 42 U.S.C. § 424a(a) and Berger, 200 F.3d at 1159.) Attorney's fees incurred in connection with the public disability award are excluded from the offset calculation. Id.

Henjum asserts that the payments made by his employer subsequent to November 4, 2003, as described in the December 22, 2006 Notice of Benefit Payment, were invalidated by the employer's subsequent appeal of the award, and that the terms of the Stipulation should govern

---

[4]   The Commissioner contends that the Appeals Council's decision, and hence its reasoning for not reviewing the ALJ's decision, is not subject to judicial review. See Browning v. Sullivan, 958 F.2d at 822-23. The Court agrees with this argument and therefore, the Court will not address Henjum's arguments regarding the Appeals Council's reasons for denying review.

the offset instead. Henjum contends the SSA's own guidelines for establishing the rate for determining an offset indicate that the first rate that should be used is the rate specified in the Award, which Henjum contends is the Stipulation in this case, because the award was appealed.[5] Henjum asserts that, "[o]nce appealed, [the worker's compensation judge's] Decision should be treated as null and void, as it was not a final Decision." (Pl.'s Mem. at 8.)

42 U.S.C. § 423a(b) "mandate[s] that an offset of a lump sum award 'approximate as nearly as possible' the offset that would apply for a periodic[6] workers' compensation benefit." Berger v. Apfel, 200 F.3d at 1161. Likewise, the agency regulation, 20 C.F.R. § 404.408(g), provides:

> (g) *Public disability benefit payable on other than a monthly basis.* Where public disability benefits are paid periodically but not monthly, or in a lump sum as a commutation of or a substitute for periodic benefits, such as a compromise and release settlement, the reduction under this section is made at the time or times and in the amounts that the Administration determines will approximate as nearly as practicable the reduction required under paragraph (a) of this section.

---

[5] The "SSA applies a three-step test to determine the rate at which to prorate [a worker's compensation lump sum settlement award]." Berger, 200 F.3d at 1160.

> [F]irst, SSA looks to the rate specified in an award; second, to the periodic rate paid prior to the settlement; and third, to the maximum benefit to which the claimant would have been entitled under the state's workers' compensation law.

Id. (citing Social Security Administration POMS DI 52001.555(C)(4)). However, POMS guidelines do not have legal force and are not binding on the Commissioner. Id. (citing Schweiker v. Hansen, 450 U.S. 785, 789 (1981). This Court notes the ALJ did not refer to this POMS guideline in his decision.

[6] Offsets of periodic, as opposed to lump sum, worker's compensation benefits are governed by 42 U.S.C. § 424a and 20 C.F.R. § 404.408(a). It appears that the agency, prior to the ALJ hearing, followed 20 C.F.R. § 404.408(a) in calculating the DIB offset based on the payments made to Henjum, as described in the Notice of Benefit Payment dated December 22, 2006. (Tr. 11-13, 36-42, 51-56.)

7

The Commissioner contends the ALJ did not have to approximate the rate at which the lump sum award in the settlement agreement would be paid, because actual payments had already been made. Also, there was no evidence that Henjum had returned more than $800 or that Henjum would actually receive future payments of $120.10 per month under the settlement agreement. The Commissioner asserts that Social Security Ruling ("SSR") 97-3 provides that the Commissioner need not blindly follow the terms of a settlement.

The Court notes that the issue the SSA addressed in SSR 97-3 was whether it should give effect to an *amended* stipulation on a *prior* lump sum workers' compensation settlement which originally resulted in offset of the disabled worker's claim. 1997 WL 605332 at *1 (SSA Oct. 3, 1997) (emphasis added). The SSA determined that it should not give effect to the amended stipulation if it was amended solely to circumvent the offset provisions of the Act. Id. The SSA expressly noted that the Ruling did not address "the related issue of the validity of stipulated lump sum settlements where the original settlement contains a term purporting to prorate a lump sum over the life expectancy of the worker." Id. at n.5. Therefore, SSR 97-3 is not directly applicable to the present case.

The Commissioner quoted Sunde v. Barnhart, 417 F.3d 986 (8th Cir. 2005) for the proposition that "Social Security Ruling 97-3 addressed a second (or amended) stipulation, but the policy of refusing to be bound by the terms of a stipulation that provides an end-run around the federal offset seems equally applicable to an original stipulation." (Def.'s Mem. in Supp. of Mot. for Summ. J. at 9). The Commissioner asserts that this case is like Sunde because the stipulation in both cases created illusory payments to create an end-run around the federal offset.

The Court notes that in Sunde, the Eighth Circuit addressed the issue of whether an attorney's fee award in a workers' compensation case could be allocated to a time period different from that during which the fees were actually paid to avoid the federal offset in DIB required under 42 U.S.C. § 423a, and held that it could not. 417 F.3d at 987, 990. Like in the present case, the stipulation provided that it was intended to maximize the employee's entitlement to Social Security disability benefits. Id. at 988. The Sunde Court held that the Commissioner's decision was consistent with the purposes underlying section 42 U.S.C. § 424a because:

> the Commissioner essentially construed [20 C.F.R.] § 404.408(d) to prohibit a WC settlement stipulation from allocating paid legal expenses to a time period different from that in which the expenses were actually paid, where evidence indicated the stipulation was designed solely for the purpose of circumventing the federal offset provision.

Id. at 989. The Sunde Court noted that although SSR 97-3 addressed a second or amended stipulation, "the policy of refusing to be bound by the terms of a stipulation that provides an end-run around the federal offset seems equally applicable to an original stipulation." Id. at 990. The court further stated, "[w]e see no basis for binding the SSA to the terms of an original stipulation that essentially increases an individual's maximum allowable DIB by creating an illusory payment period for attorney's fees." Id. The court cited Berger, 200 F.3d at 1161, where it "held that a 'bare intent to evade the offset' was an insufficient basis upon which to bind the SSA to the terms of the settlement." Id.

This Court finds that the reasoning of the Eighth Circuit in Sunde and Berger also applies here, where the actual workers' compensation payments Henjum received [$509.82 weekly or

9

approximately $2,209.22 monthly][7] were much greater than the illusory lifetime expectancy payments described in the Stipulation [$120.10 monthly].  In the Stipulation, the lifetime expectancy payment provision was created for the express purpose of maximizing Henjum's entitlement to Social Security disability benefits.

When there is a settlement for a lump sum workers' compensation benefit, the ALJ need only approximate how the benefits would have been paid on a monthly basis.  See 20 C.F.R. § 404.408(g).  The ALJ's decision to use the monthly benefit actually paid to Henjum before he entered into the Stipulation, even though the ALJ did not deduct the $800.00 Henjum paid back, was a close estimate to the monthly benefit Henjum actually received between November 4, 2003 and October 12, 2004.

Henjum did not in fact receive lifetime payments under the Stipulation; and there is nothing in the Stipulation that indicates the provision for lifetime payments was anything other than an end-run around the federal offset provision.  See Berger, 200 F.3d at 1161 ("[w]e are inclined to agree that SSA was not compelled to prorate the settlement award over Berger's remaining life expectancy.")  The illusory payments of $120.10 a month over Plaintiff's life expectancy were far less than what Henjum actually received during the relevant time period and retained after the Stipulation.  The Court must defer to reasonable regulatory interpretations.  Shalala v. Guernsey Memorial Hosp., 514 U.S. 87, 94-95 (1995).  Therefore, if an ALJ reasonably determined a reduction that would approximate, as nearly as practicable, the periodic monthly benefit reduction under the statute and regulation, the Court must affirm the ALJ.  See e.g., Bubnis v. Apfel, 150 F.3d 177, 181-85 (2nd Cir. 1998).  The Court finds the ALJ's decision

---

[7] The Court calculated the approximate monthly payment by multiplying 509.82 by 52 and dividing by twelve.  See also Tr. 39 "Start 12/03  Stop 09/04" "WC only 2209.20"

was based on a reasonable interpretation of 20 C.F.R. § 404.408(b), because it closely approximated the workers' compensation benefits Henjum was actually paid on a monthly basis.

JJG